IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
SENIOR JUDGE WALKER D. MILLER

Civil Action No. 09-cv-02303-WDM-MJW

WESTERN TRADITION PARTNERSHIP, a Colorado corporation, et al.,

      Plaintiffs,

v.

THE CITY OF LONGMONT, a municipal corporation, and
VALERIA SKITT, in her official capacity as Longmont City Clerk,

      Defendants.

---

## FINDINGS AND ORDER ON PLAINTIFFS' REQUEST
## FOR PRELIMINARY INJUNCTION

---

Miller, J.

      This case is before me on Plaintiffs' Motion for Preliminary Injunction (doc no 6).

An evidentiary hearing in this matter was held on October 15, 2009.  After consideration

of the parties arguments and evidence submitted, I conclude that, for the reasons that

follow, Plaintiffs' motion will be granted in part and a preliminary injunction shall issue.

<u>Background</u>

      Plaintiffs are various individuals and organizations who wish to make

communications regarding candidates and issues to the residents of Longmont,

Colorado in the weeks leading up to a municipal election.  A newly amended municipal

ordinance governing political contributions and expenditures, the Longmont Fair

Campaign Practices Act ("LFCPA") imposes certain regulatory requirements on

election-related speech and expenditures.  Plaintiffs believe portions of those

regulations are unconstitutional on their face or as apparently interpreted by the City of

Longmont and/or as applied to Plaintiffs.

Ultimately, Plaintiffs seeks declaratory relief regarding the meaning and constitutionality of various provisions of the LFCPA, injunctive relief in the form of an order requiring Defendants to include in all Longmont utility bills a notice correcting previous allegedly erroneous descriptions of the LFCPA, and, at issue here, a preliminary injunction enjoining enforcement of these provisions pending the outcome of this case.  Defendants deny that the plaintiffs can show injury in fact as a result of the LFCPA and assert that Plaintiffs therefore lack standing to challenge the ordinance.

<u>Standard of Review</u>

In the common law of the Tenth Circuit, the moving party seeking to obtain preliminary injunctive relief must establish: (1) a substantial likelihood that the movant will eventually prevail on the merits; (2) a showing that the movant will suffer irreparable injury unless the injunction issues; (3) proof that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) a showing that the injunction, if issued, would not be adverse to the public interest.  *Id.*  In cases where the movant has prevailed on the other factors, the Tenth Circuit uses a liberal definition of "probability of success": the plaintiff need only raise "questions going to the merits so serious, substantial, difficult and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation."  *Lundgrin v. Claytor*, 619 F.2d 61, 63 (10th Cir. 1980) (internal quotations omitted).

However, the following types of preliminary injunctions are disfavored and require that the movant satisfy an even heavier burden: (1) a preliminary injunction that disturbs the status quo; (2) a preliminary injunction that is mandatory as opposed to prohibitory;

and (3) a preliminary injunction that affords the movant substantially all the relief they may recover at the conclusion of a full trial on the merits.  *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004) (citing *SCFC ILC*, 936 F.2d at 1098-99).  These situations "must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course."  *Id.*  Moreover, "a party seeking such an injunction must make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms, and may not rely on [the Tenth Circuit's] modified-likelihood-of-success-on-the-merits standard."  *Id.* at 976.  Because Plaintiffs will obtain in a preliminary injunction substantially all the relief they may recover at the conclusion of a full trial on the merits, this is a disfavored type of injunction and Plaintiffs must satisfy the heightened standard.  The parties agree that the heightened standard applies here.

<u>Findings of Fact</u>

I make the following findings of fact:

1.  Defendant City of Longmont ("Longmont" or "City") is a home rule municipality which enacted the Longmont Fair Campaign Practices Act ("LFCPA") in 2000, and amended it in 2009.  Ex. 1.

2.  Defendant Valeria Skitt ("Skitt") is the Longmont City Clerk.

3.  Plaintiff Julia Pirnack ("Pirnack") is a Longmont resident and its former mayor.

4.  Plaintiff Chris Rodriguez ("Rodriguez") is a Longmont resident actively involved in City politics.

5.  Plaintiff Longmont Association of Realtors ("LAR") is an organization formed

in 1919 for the purpose of assisting realtors with their businesses and to educate the public on property transfer matters.

6.  Plaintiff Western Tradition Partnership ("WTP") is an organization formed for the purposes of lobbying and grassroots organization on land use issues.

7.  Plaintiff Longmont Leadership Committee ("LLC") is an unincorporated non-profit association formed for the purpose of supporting or opposing candidates in Longmont municipal elections.

8.  Longmont currently has a municipal election scheduled for November 3, 2009, to decide the mayor and three city council positions.

9.  Longmont operates municipally owned utilities and bills its customers monthly. Longmont routinely includes a publication in its utility bills identified as "City Line."  The August 2009 City Line sent to customers included an article entitled "Don't Get Fined for Your Political Views."  Ex. 2.  The article states that the LFCPA "requires that when an individual, a business, an organization or a group of people spends money on electioneering communications (ads, fliers, letters, broadcasts of any sort, etc.) those expenditures must be reported to the City Clerk's office when they reach a total of $100" and goes on to declare that "certain items must be disclosed in the communication itself, including the full name of the individual or group paying for the communication, the name of the registered agent, if any, the amount of the expenditure . . . ."  *Id.* (emphasis added)

10.  LFCPA defines "electioneering communication" as follows:

> "Electioneering communication" means <u>any advocacy for or against</u> a candidate or an issue, which is distributed that:
> 1.  Refers to a clearly identified candidate or issue.  The

> candidate or issue is considered to be "clearly identified" if
> the candidate's picture or the issue's identity is apparent by
> clear reference; and
> 2.  Is distributed within ninety (90) days before a city election
> or special election; and
> 3.  Is distributed to an audience that includes members of
> the electorate for such public office or such issue.

LFCPA § 2.04.203 (emphasis added).  Certain categories of speech are expressly

excluded from the definition of electioneering communication, such as opinion or

commentary writing in newspapers and periodicals, and communications by persons

made in the regular course and scope of their business and any communication made

by a membership organization solely to members of such organizations and their

families.

11.   The LFCPA defines "expenditure" as "the payment, distribution, loan,

advance, deposit or gift of money by any person for the purpose of expressly

advocating the election or defeat of a candidate or supporting or opposing a ballot issue

or ballot question."  *Id.* (emphasis added).

12.   A subset of expenditure is an "independent expenditure," defined as follows:

> "Independent expenditure" means any expenditure
> supporting or opposing a candidate that is not made with the
> cooperation or with the prior consent of, or in consultation
> with, or in coordination with, or at the request or suggestion
> of, a candidate, a candidate's agent or candidate's
> committee.

*Id.* (emphasis added).  "Supporting or opposing" a candidate is further defined as a

communication that expressly advocates the election or defeat of one or more clearly

defined candidates for office or a communication that refers to clearly identified

candidates and is distributed within 90 days before an election to an audience that

includes members of the electorate.  *Id.*

13.  The LFCPA defines "political committee" as "two or more persons who are elected, appointed, or chosen or have associated themselves for the purpose of making contributions to candidate committees, issue committees, or other political committees, or for the purpose of making independent expenditures."  *Id.*

14.  Independent expenditures are regulated in various ways.  First, notice of any expenditures in excess of $100 must be delivered in writing within 72 hours to all candidates and the city clerk.  LFCPA §2.04.206.  Persons making independent expenditures over $100 must also disclose in the electioneering communication the full name of the person, registered agent, the amount of the expenditure, and the specific statement that the advertisement or material is not authorized by any candidate.  *Id.*

15.  Political committees are also regulated and must comply with various reporting and registration requirements.  LFCPA § 2.04.207.

16.  There are civil penalties for failure to comply with the ordinance. LFCPA § 2.04.211.  For example, failure to file reports required by the ordinance (other than independent expenditures) results in a fine of $400 per day up to 10 days.  Failure to file a report for independent expenditures results in a fine of $200 per day for up to 10 days.  Failure to disclose an expenditure results in a fine of $100 per day for each violation (up to 10 days).  Failure to file a political committee statement of registration results in a fine of $100.

17.  Some plaintiffs have already communicated with Longmont residents concerning the November 2009 election and all desire to do so prior to the election.

18.  Examples of actual or intended communications are Exs. 8, 9, 11, 16A, 17A,

and 18A.

19.  Plaintiffs LAR and LLC desire to engage in telephonic communications with either scripts (Ex. 10) or Robocalls (Ex. 19).

20.  Each plaintiff estimates that the cost of its communications will exceed $100 but that it is difficult to determine the actual cost until all costs are determined after the communication has been completed.  In particular, plaintiffs testified that it would be impossible to state the precise cost of expenditures in the communication being made.

21.  Several plaintiffs do not have a registered agent.

22.  Complaints have been filed with the Longmont Election Committee (see LFCPA § 2.04.210.5) by Karen Benker ("Benker"), a candidate for council, concerning the communications of plaintiffs and others alleging violations of the LFCPA.  Exs. 3-7. These complaints have not been resolved.

23.  Principally because of the City Line publication quoted above and the complaints filed by Benker, plaintiffs are concerned that Longmont will prosecute and penalize plaintiffs for alleged violations of the LFCPA, including alleged failures to comply with the filing of campaign expenditure forms with the City Clerk's office.  *See* Exs. 3 and 5.

24.  LAR has previously endorsed candidates in local elections and made expenditures in support of those candidates in the form of advertisements and phone banks.  LAR desires to continue these activities but is concerned that the City will treat it as a "political committee" under the LFCPA.  Skitt has declined to advise representatives of LAR whether the City would consider LAR a political committee. However, there is no other evidence that the City considers LAR a political committee.

<u>Discussion</u>

A.    <u>Standing</u>

Defendants have challenged Plaintiffs' standing to bring this lawsuit.  Standing requires a showing that: (1) the plaintiff has suffered an injury in fact; (2) the injury is traceable to the defendants; and (3) the injury can be redressed by a favorable decision of this court.  *Mink v. Suthers*, 482 F.3d 1244, 1253 (10th Cir. 2007).  In *Mink*, the Tenth Circuit explained that in freedom of expression cases such as this, injury in fact can be shown by alleging (1) an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by law; and (2) a credible threat of future prosecution or other consequences following the law's enforcement.  *Id.*  A plaintiff need not expose himself to actual arrest or prosecution to be entitled to challenge a statute or ordinance that he claims unlawfully infringes on his First Amendment rights.  *Id.* However, the "mere presence on the statute books of an unconstitutional statute, in the absence of enforcement or credible threat of enforcement, does not entitle anyone to sue, even if they allege an inhibiting effect on constitutionally protected conduct prohibited by the statute."  *Id.*  (quoting *Winsness v. Yocom*, 433 F.3d 727, 732 (10th Cir. 2006)).  The fear of prosecution must be objectively justified; assurances from prosecutors or other enforcement agencies that they do not intend to bring charges are sufficient to defeat standing.  *Id.*  Standing is determined at the time the action is brought.  *Id.*

Addressing this issue on a claims basis, Claims 1 and 2 are asserted by Pirnack and WTP.  They intend to engage in electioneering communication but not express advocacy concerning candidates and intend to spend in excess of $100.  They believe

8

that their efforts are not independent expenditures over $100 and therefore are not governed by the LFCPA.  The statement of the City via the City Line publication, however, indicates a possible intent to regulate <u>all</u> electioneering communication, although ordinance itself extends only to independent expenditures [and speech by candidates/campaigns/issue committees, not at issue here].  Given the complaints filed and the City Line statement, there is a credible threat of sanction and other consequences for such activity, which is arguably affected with constitutional interest. Accordingly, these plaintiffs have adequately alleged an injury in fact traceable to Defendants which can be remedied by this court.

Similarly, the plaintiffs challenging the notice and disclosure requirements for independent expenditures over $100 (Claims 3 & 4) also show injury in fact, including Rodriguez, the LAR, and the LLC.  These plaintiffs intend to make independent expenditures subject to the LFCPA but cannot or do not wish to comply with all notice and disclosure provisions of the ordinance, which Plaintiffs assert are unconstitutional. This conduct may violate the LFCPA.  Complaints have been filed against these and other parties for alleged failures to comply with LFCPA, particularly expenditure reporting requirements.  The City is reviewing and may act upon such complaints.  I conclude that these plaintiffs face a credible threat of sanction by Defendants for failing to comply with the notice and disclosure provisions of the ordinance and have therefore established their injury in fact, which may be redressed by this court.

Claims 5 and 6 are made by LAR and involve its concern that the City may regulate LAR as a "political committee" as defined by LFCPA.  LAR has made or intends to make contributions in support of candidates and incur other expenditures

9

which may well be classified as independent expenditures subject to regulation under the LFCPA but, if considered a political committee, it would be subject to further regulation. At this point no such claim has been specifically made but LAR has been unable to determine Longmont's intent regarding any potential sanction. Particularly given that LAR otherwise has standing, I conclude that it has standing to raise this issue given the threat of possible prosecution.

Accordingly, I conclude that all plaintiffs have standing to make the claims set forth in the complaint.

B.     Analysis of Preliminary Injunction Factors

In addressing the merits of this case several overarching considerations come in to play. First, and as noted, Plaintiffs seek disfavored preliminary relief and bear a heightened burden of proof of making a strong showing as to the likelihood of success of their claims, all of which involve an alleged unconstitutional restriction of their First Amendment rights of expression.

Second, since constitutional challenges are at issue, I must next take into account special burden-shifting rules applicable to such challenges. A duly enacted ordinance would be presumed constitutional unless there is a showing that it infringes on First Amendment rights when the burden would be shifted to the proponent to establish its constitutionality. *Assoc. of Community Organizations for Reform Now (ACORN) v. Municipality of Golden,* 744 F.2d 739, 746 (10th Cir. 1984).

Next, with a constitutional challenge I should rule as narrowly as possible on the facts before me. *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 501 (1985) (cardinal rule "governing the federal courts" is "never to formulate a rule of constitutional law

broader than is required by the precise facts to which it is to be applied"); *Colorado Right to Life Committee, Inc. v. Coffman*, 498 F.3d 1137, 1155-56 (10th Cir. 2007). With that principle in mind, I analyze the constitutional issues on an "as applied," rather than "facial" basis. In particular, an as-applied challenge to a campaign finance law the standard is whether the restrictions are both "narrowly tailored and necessary to serve a compelling state interest." *Id.* at 1446. Since LFCPA regulates "core political speech," the correct legal standard for review is strict scrutiny. *Buckley v. American Constitutional Law Found., Inc.,* 525 U.S. 182, 207 (1999); *Yes on Term Limits, Inc. v. Savage*, 550 F.3d 1023, 1028 (10th Cir. 2008).

Applying these principles to my analysis of the four prongs of a preliminary injunction showing, I find and conclude as follows:

1.      Likelihood of Success on the Merits

To determine whether any plaintiff has met its burden, I first conclude that, given the City Line publication, and other matters, Plaintiffs have shown a threat to their First Amendment rights so that the ultimate burden of proof on the constitutionality of the LFCPA rests with Defendants.

Turning first to Claims 1 and 2, their main thrust is to establish that the reporting and disclosure requirements of the LFCPA do not apply to all electioneering communications but rather are limited to defined independent expenditures. Indeed, Plaintiffs concede that such expenditures may be regulated upon certain terms. Ironically, Defendants do not disagree as their counsel disclaimed in open court any authority to regulate electioneering communications which are not independent expenditures.

11

Given the parties' apparent agreement, it is not apparent that there is any relevant ambiguity on this issue to trigger interpretation.  Assuming that there is some ambiguity, however, I should choose a construction of the ordinance that avoids a conclusion of unconstitutionality.  *Jones v. United States*, 529 U.S. 848, 857 (2000); *United States v. Hinckley*, 550 F.3d 926, 948 (10th Cir. 2008) ("The Supreme Court tells us that we ought to construe statutes to avoid problems of potential constitutional dimension when a plausible alternative interpretation exists.") (Gorsuch, J., concurring) (citation omitted).  I will so proceed.

I begin with the plain language of the ordinance.  "Independent expenditure" is a subset of "expenditure," which is by its very terms means payments used for "express advocacy."  "Express advocacy" is a term of art that has been established in Tenth Circuit and United States Supreme Court case law to mean speech which contains express terms advocating the election or defeat of a candidate (e.g., "vote for," "defeat," "reject," etc.), or its functional equivalent.  *Citizens for Responsible Gov't State Political Action Committee v. Davidson*, 236 F.3d 1174, 1187 (10th Cir. 2000) (citations omitted). Regulation of express advocacy may be justified by governmental interests in ensuring fair elections while avoiding vagueness and overbreadth concerns.  *Buckley v. Valeo*, 424 U.S. 1, 41-44 (1976).

Here, I conclude that while "independent expenditure" is limited by the definition of "expenditure" to mean communications containing express advocacy, the definition of "electioneering communication" contains no such limitation and is therefore broader. Electioneering communication may therefore be speech that does or does not amount to express advocacy.  My reading of the ordinance shows that only specific types of

12

electioneering communication are regulated by the LFCPA, including independent expenditures.[1]

Therefore, to the extent there is any ambiguity, I conclude that the plaintiffs have shown that there is a likelihood that a judicial determination would conclude under the terms of the ordinance and existing constitutional case law that the City cannot regulate expenditures for electioneering communication unless they are independent expenditures containing express advocacy.  This is not a final determination but rather a preliminary determination for preliminary injunction purposes.

Plaintiffs in Claims 3 and 4 challenge the LFCPA's reporting and disclosure requirements for independent expenditures exceeding $100.  Reporting requirements such as these have been previously held to be burdens on First Amendment rights to engage in core political speech.  *In Citizens for Responsible Government*, the Tenth Circuit held that a state law requiring that independent expenditures be reported to candidates was not justified and failed to survive strict scrutiny.  236 F.3d at 1198. The relevant provisions in LFCPA are essentially identical, yet Defendants have offered no justification for this requirement, much less one that is narrowly tailored and necessary to serve a compelling state interest.  Accordingly, I agree that Plaintiffs have satisfied their burden to show that the are likely to succeed on the merits regarding the constitutionality of this portion of the ordinance.

Similarly, the Tenth Circuit in *Citizens for Responsible Government* also struck down a requirement that messages resulting from independent expenditures be

_____

[1]The ordinance also appears to regulate expenditures of candidates and campaign committees and other committees, but these are not at issue in this case.

required to carry a disclosure nearly identical to the one required by the LFCPA, specifically the requirement that the disclosure include the donor's name, the amount of the expenditure, and a statement that the message was not authorized by any candidate.  236 F.3d at 1199.  Again, Defendants have offered no justification for this that is narrowly tailored and necessary to serve a compelling state interest and I conclude that Plaintiffs are likely to prevail on showing that this provision will not survive strict scrutiny.

Turning to Claims 5 and 6, I conclude that LAR has not met its burden of showing that it is likely to succeed on the merits regarding the alleged unconstitutionality of the LFCPA's definition of "political committee."  Under prevailing Colorado and Tenth Circuit law, the phrase "for the purpose of" in election statutes is read to mean "for the original purpose of."  *See, e.g.*, *Common Sense Alliance v. Davidson*, 995 P.2d 748, 758 (Colo. 2000) (construing a similar statute and determining that "for the purpose of" is read to include "only those issue committees that were formed for the purpose of supporting or opposing a ballot initiative.  Organizations that form for another purpose and later commit to ballot issue activity are not within the clear ambit of the statute.") (quoted in *Citizens for Responsible Gov't*, 236 F.3d at 1191).  No evidence has been presented that indicates the City intends to interpret its own ordinance in contradiction to this established law.  Since the evidence shows that the LAR was not originally formed for the purpose of making contributions or independent expenditures, but rather for other purposes entirely, there is no reason to believe that it falls within the LFCPA's definition of a political committee or that the City otherwise intends to regulate this plaintiff as a political committee.  Under the circumstances, this plaintiff has not met its burden of

14

showing a threat of infringement of this particular right and, hence, likelihood of success.

       2.     <u>Irreparable Harm</u>

I find that plaintiffs face irreparable harm because the FCPA reduces plaintiffs' ability to exercise their First Amendment rights. Loss of First Amendment rights, even for temporary periods, constitutes irreparable harm. *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

       3.     <u>Balance of Equities</u>

The injury to the plaintiffs' First Amendment rights outweighs the City's interest in enforcing impermissible campaign finance laws. *Elam Construction, Inc. v. Regional Transportation District*, 129 F.3d 1343, 1347 (10th Cir. 1997).

       4.     <u>Public Interest</u>

As a general matter, the public interest favors the ability of plaintiffs to assert their First Amendment Rights. *Elam Construction* at 1347. Here, the "public interest favors the assertion of First Amendment rights[, which] outweighs the interests served by regulating the kind of speech at issue." *Kansans for Life, Inc. v. Gaede*, 38 F.Supp.2d 928, 938 (D. Kan. 1999).

There has been no request for security or bond for costs and damages and there is no evidence of any need for such security on this particular matter.

Accordingly, it is ordered:

1.     Plaintiffs' motion for a preliminary injunction (doc no 6) is GRANTED in part to the extent expressed herein but otherwise denied.

2.     Defendants are enjoined, pending the outcome of these proceedings or

further order from the Court, from regulating the electioneering communications of Pirnack and WTP, unless those electioneering communications also simultaneously qualify as "independent expenditures."  Defendants are further enjoined from requiring Rodriguez, LLC, and LAR, when these plaintiffs make an independent expenditure in excess of $100, to include in the communication: (1) the total amount of the expenditure; or (2) the name of a registered agent.  In addition, pending the outcome of this case, the City of Longmont may not require these plaintiffs, when they make an independent expenditure in excess of $100, to distribute notices of the expenditure to affected candidates.

3.      This injunction is binding upon the parties to this action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of this order by personal service or otherwise.

DATED at Denver, Colorado, on October 21, 2009.

BY THE COURT:

s/ Walker D. Miller
United States Senior District Judge